Petitioner First Alabama Bank of Montgomery (Bank) seeks a writ of mandamus to compel the trial court to transfer the case from Baldwin to Montgomery County.
Barclay International, Inc., (Barclay) and its president, Joseph Dzwonkowski, and his wife, Patricia Dzwonkowski, filed suit against Bank. Bank had called upon a letter of credit given to it as further assurance of the payment on industrial bonds which Bank held. The complaint alleges that Bank misapplied the proceeds from the letter of credit, causing Barclay to be declared in default on the bonds. Barclay and the individual plaintiffs also allege that as a result of the false and slanderous publication of statements by the Bank that plaintiffs were in default, personal and business interests of the plaintiffs were injured.
Bank moved to dismiss the action in Baldwin County for lack of venue. Bank took the position that it was a foreign corporation and as such it could only be sued in the county where it was doing business by agent. The Bank contended that it did not do business by agent in Baldwin County. After a hearing the trial court refused to dismiss the action or transfer it to Montgomery County, where the Bank maintained venue was proper.
The threshold issue to be resolved is whether Bank, a corporation organized under the national banking laws with its principal place of business in Alabama is a foreign or domestic corporation for the purpose of determining venue. This is a case of first impression in Alabama, because venue with respect to national banks was formerly controlled by federal statute.12 U.S.C. § 94 (1945). In 1982, § 94 was amended so that, except in a few situations inapplicable in this case, federal law no longer controls venue. Therefore, we must look to state law to determine where venue is proper.
Section 232 of the Alabama Constitution of 1901 and Code 1975, § 6-3-7, establish where venue is proper with respect to a *Page 1317 
foreign corporation. Ex parte Harrington Manufacturing Company,Inc., 414 So.2d 74 (Ala. 1982). Section 6-3-7 also establishes where venue is proper with respect to a domestic corporation. There is no statutory definition of "domestic" or "foreign corporation" for the purposes of venue.
The legislature has defined the term "foreign corporation" in other contexts. The Alabama Business Corporation Act, Chapter 2A of Title 10, defines "foreign corporation" in two different ways. Section 10-2A-2 (2) defines a foreign corporation for the purposes of Chapter 2A generally as "A corporation for profit organized under laws other than the laws of this state. . . ." In Division 1 of Article 8, Chapter 2A, that part of the foreign corporation article regulating foreign corporations acting in fiduciary capacities, the term foreign corporation means:
 "(1) Any bank or other corporation now or hereafter organized or existing under the laws of any state of the United States other than the state of Alabama; and
 "(2) Any national banking association having its principal place of business in any state of the United States other than the state of Alabama."
Code 1975, § 10-2A-220. The net result is that in one context the legislature has decided that this kind of bank is a foreign corporation and in another context it has decided that it is not a foreign corporation. Because we lack clear statutory guidance, we will examine the nature of corporations organized under federal law and the policy behind the constitutional venue provisions.
Before the adoption of the 1975 Code, corporations organized under national law were not treated as foreign corporations for the purposes of our business corporation statutes. Title 10, § 198, 1940 Code (and as Recomp. 1958); 1923 Code, § 7217. Moreover in Jeffreys v. Federal Land Bank of New Orleans,238 Ala. 97, 98, 189 So. 557, 558 (1939), the Court, while relying on our statutes, said that the statute "but gives expression to the current of judicial thought to the effect that the United States is not a foreign sovereignty as regards the several states. . . ."
As mentioned in Jeffreys, the settled rule is that a "corporation created by Congress in the exercise of its powers as the legislature for the United States . . . is not to be regarded as a foreign corporation, but as a domestic corporation, in any state or territory in which it may do business. . . ." 17 W. Fletcher, Cyclopedia of the Law ofPrivate Corporations, § 8291 p. 12 (perm. ed. 1977). Specifically with regard to the status of national banking associations, the general rule is that they "are domestic corporations in the states in which they are located and foreign corporations in other states." Id. at § 8291 p. 15. Congress, in setting out when diversity jurisdiction exists with respect to national banks, took a similar position by stating that national banks were to be treated as citizens of the state where located. 28 U.S.C. § 1348 (1976).
The policy concerns behind the constitutional provisions dealing with foreign corporations were stated in Nelms v.Edinburg American Land Mortgage Co., 92 Ala. 157, 159,9 So. 141 (1890):[1]
 "Foreign corporations are essentially non-residents. Suits against non-residents are sometimes attended with inconvenience, difficulties and expense, and judgments rendered are not always absolute. Service by publication only, may be sufficient to authorize judgment and condemnation, when the proceedings are in rem, and for all purposes, within the jurisdiction of the State; but such judgments rendered in cases where the court did not have jurisdiction of the person, are not conclusive as personal judgments beyond the jurisdiction of the State."
A national bank with its principal place of business in Alabama is not, in *Page 1318 
essence, a non-resident. The problems that arise in suing a non-resident do not arise when one sues a national bank located in Alabama.[2] In light of Congress's determination concerning citizenship of national banks for jurisdictional purposes and the policy behind our venue provisions concerning foreign corporations, we see no reason why Bank should not be treated as a domestic corporation. Therefore, we hold that a national bank with its principal place of business in Alabama is not a foreign corporation for the purposes of venue.
A domestic corporation can be sued "in any county in which it does business by agent at the time the cause of action arose; provided that all actions against a domestic corporation for personal injuries must be commenced in the county where the plaintiff resides if such corporation does business by agent in the county of the plaintiff's residence." Code 1975, § 6-3-7.
The individual plaintiffs contend that they were defamed in a letter sent by Bank to the Industrial Development Board in Baldwin County. The phrase "personal injury" comprehends mental distress, annoyance, inconvenience, humiliation, and other manifestations of disturbed or perturbed feelings. Hatcher v.Southern Railway Co., 191 Ala. 634, 68 So. 55 (1916). The inquiry in this case is where this "injury" took place.
The term "injury" in the venue statute has been determined to refer to the wrongful act or omission, as opposed to the damage. Age-Herald Publishing Co. v. Huddleston, 207 Ala. 40,92 So. 193 (1921). In coming to this conclusion, this Court said:
 "The meaning we accord to `injury' in section 6112 [Code 1907] is made clearer by a consideration of 6110, which is a general venue statute, and which authorizes the bringing of non-contractual personal actions either in the county of the defendant's residence, `or in the county in which the act or omission complained of may have been done, or may have occurred.' Certainly, in enacting the later section (6112), the Legislature did not intend to change the basis of venue in tort actions from the county in which the wrongful act was done or occurred to the county, or any county, in which the resulting damage occurred, and to thereby effect so vital a change in actions only against corporate defendants, and for personal injuries only."
Id., 207 Ala. at 44, 92 So. at 197.
The Court concluded that "in an action for libel against a newspaper the injury — the breach of duty — occurs, within the meaning and application of the venue statute, at the place where the newspaper is primarily published, and not in other places where it is secondarily published, that is merely recirculated." Id., 207 Ala. at 45, 92 So. at 198.
Fourteen months after Age-Herald was decided, this Court held that venue was proper "at the place of posting or at the place of receipt by the addressee" in an action for libelous matter sent through the mail. Kenney v. Gurley, 208 Ala. 623, 625,95 So. 34, 36 (1923). See also, Weir v. Brotherhood of RailroadTrainmen, 221 Ala. 494, 129 So. 267 (1930). While Kenney was decided under the statute concerning venue in suits against individuals and Age-Herald was decided under the statute concerning venue in suits against corporations, the focus under both statutes is on the question of where the wrongful act or omission occurs. Therefore, we find that the Kenney holding is controlling. The action for libel was properly brought in Baldwin County, where the letter was received. Because the libel action was properly brought in Baldwin County, the other claims are also properly brought there. A.R.Civ.P. 82 (c). *Page 1319 
Therefore, we deny the writ of mandamus.
WRIT DENIED.
JONES, SHORES, BEATTY and ADAMS, JJ., concur.
[1] While the Court in Nelms was referring to Article XIV, § 4, of the Alabama Constitution of 1875, the provisions of § 4 are virtually identical to the first two sentences of Article XII, § 232, of the Alabama Constitution of 1901.
[2] One aspect of having limited venue with respect to national banks, namely not having the bank's records removed from its place of business, no longer is deemed valid, as evidenced by Congress's amendment to 12 U.S.C. § 94. Sen. Rep. No. 9-536, 97th Cong., 2d Sess., reprinted in 1982 U.S. Code Cong. 
Ad. News 3054, 3082.